UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RIVAS,<br>BOP #14267-298,<br><br>                              Plaintiff,<br><br>vs.<br><br>MCC San Diego;<br>JASON BURGANSON, Correctional Officer,<br><br>                              Defendants. | Case No.: 25-cv-00806-AJB-BLM<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)**<br><br>**[Doc. No. 4]** |

Plaintiff David Rivas, proceeding *pro se* and while incarcerated at the Metropolitan Correctional Center ("MCC") in San Diego, filed a letter entitled as a "petition" with the Clerk of Court on April 2, 2025. (*See* Doc. No. 1.) Because his petition seeks $3 million in damages from the MCC and Officer Jason Burganson based on claims of having been deprived of his personal property and subjected to cruel and unusual conditions of confinement at MCC, the Court construes Plaintiff's petition as a complaint arising under general federal question jurisdiction pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1]

---

[1] Courts have a duty to construe *pro se* pleadings and motions liberally, *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003), and a complaint "need not identify the statutory or constitutional source

1

25-cv-00806-AJB-BLM

Because Plaintiff failed to pay the $405 civil filing fee required by 28 U.S.C. § 1914(a), the Court dismissed the case on May 12, 2025, but granted him leave to re-open it by either paying the fee in full or filing a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (*See* Doc. No. 2 at 3–4.) Plaintiff complied by filing an IFP motion from USP Coleman II, where he appears to have been transferred and where he remains incarcerated.[2] (*See* Doc. No. 4.)

For the reasons explained, the Court now **GRANTS** Plaintiff leave to proceed IFP, but **DISMISSES** his complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a claim upon which *Bivens* relief may be granted.

### I.     MOTION TO PROCEED IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a $405 filing fee.[3] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act]

---

of the claim raised in order to survive [. . . ] dismiss[al]." *Alvarez v. Hill*, 518 F.3d 1152, 1157–58 (9th Cir. 2008).

[2] *See* https://www.bop.gov/inmateloc/(BOP Register Number 14267298) (last visited Oct. 14, 2025). The Court may take judicial notice of public records available on online inmate locators. *See United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator).

[3] In addition to the $350 statutory fee, civil litigants filing suit are required to pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The administrative portion of the fee does not apply to persons granted leave to proceed IFP. *Id.*

amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002); 28 U.S.C. §§ 1915(b)(1) & (2).

In support of his IFP Motion, Plaintiff has submitted a copy of his BOP trust account statement, as well as a prison certificate authorized by a USP Coleman II accounting official. (*See* Doc. No. 4 at 4, 6.) *See also* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff had $405.98 in average monthly deposits, carried an average balance of $267.43, and had an available balance of $61.37 in his trust account at time of filing. (*See* Doc. No. 4 at 4, 6.)

Based on this showing, the Court **GRANTS** Plaintiff's Motion to Proceed IFP, assesses a partial initial filing fee of $81.19 pursuant to 28 U.S.C. § 1915(b)(1), and **DIRECTS** the Warden of USP Coleman II to collect this fee and forward it to the Clerk of

the Court unless Plaintiff "has no means to pay it" at the time this Order is executed. *Bruce*, 577 U.S. 84–85. Thereafter, the Warden of USP Coleman II, and any agency later having custody, must send payments from Plaintiff's account to the Clerk of the Court until the full $350 statutory filing fee is paid by installment pursuant to 28 U.S.C. § 1915(b)(2).

## II.   SCREENING

### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his pleading requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts . . . to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation

where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citation omitted), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Factual Allegations

In his petition, Plaintiff seeks to bring a "civil law suit against MCC San Diego and Officer Jason Burganson." (Doc. No. 1 at 1.) He claims he was placed in a secured housing unit ("SHU") at MCC for "non-disciplinary reasons," and until the conclusion of his "court hearings." (*Id.*) Plaintiff alleges conditions in the SHU were "very harsh" and as a result, concludes he was subject to "cruel and unusual punishment." (*Id.*) Specifically, Plaintiff claims unidentified correctional staff attempted to house him with another inmate who was incompatible "in hopes that [he] g[o]t assaulted," although he no longer shared a cell with anyone. (*Id.* at 3.) While in the SHU, Plaintiff was permitted to shower only three times per week, mostly restricted to his cell, provided limited access to the phone, commissary, and toiletries, and refused a special non-allergic diet. (*Id.* at 1–3.)

Plaintiff further claims Officer Burganson "for some odd reason . . . develop[ed] a lot of hate towards [him]," spit in his food, "gave all [his] personal property away," and encouraged other officers to "mistreat" him. (*Id.* at 3, 5.) After he filed a grievance, Plaintiff's food portions increased, but he alleges the "torture tactics" soon resumed and two subsequent grievances were "thrown away." (*Id.* at 5–6.) In addition to his lost property, Plaintiff claims to have lost sleep due to fear of further retaliation while he was housed at MCC, for which he now seeks $3 million in damages. (*Id.* at 6.)

### C. Discussion

#### 1. *Bivens* Claims against MCC

First, the Court finds Plaintiff may not bring a *Bivens* suit against the MCC itself. "In *Bivens*, th[e] [Supreme] Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional

rights.'" *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). "In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'" *Iqbal*, 556 U.S. at 675 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)). Thus, assuming a *Bivens* cause of action exists, the plaintiff must allege facts showing that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a federal actor. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

Here, to the extent Plaintiff seek to hold the MCC liable for damages incurred at the MCC for allegedly wrongful acts committed by a group of mostly unidentified individual officers, he fails to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. A *Bivens* action may only be brought against a federal official in his or her individual capacity. *See Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996) (a *Bivens* action "can be maintained against a defendant in his or her individual action only, and not in his or her official capacity."). A *Bivens* claim cannot stand against the United States, or any of its departments, offices, or agencies, like the BOP or MCC. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) ("[T]he purpose of *Bivens* is to deter *the officer*.") (emphasis original); *see also Lanuza v. Love*, 899 F.3d 1019, 1029–32 (9th Cir. 2018) (noting that a claim for damages based on individualized mistreatment by rank-and-file federal officers is what *Bivens* was meant to address). Indeed, the Supreme Court has held that "[a]n extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself." *Meyer*, 510 U.S. at 486.

Therefore, to the extent Plaintiff names the MCC as a Defendant, he fails to state a claim upon which *Bivens* relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. *Bivens* Claims against Officer Burganson

Second, the Court finds the cruel and unusual punishment and lost property deprivations attributed to Officer Burganson also fail to state a plausible claim for relief

under *Bivens* and must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Courts recognize only a narrow category of implied causes of action that may be brought against federal officials for alleged civil rights violations committed in their individual capacities.[4] *See DeVillier v. Texas,* 601 U.S. 285, 291 (2024) *(*citing *Egbert v. Boule,* 596 U.S. 482, 490–491 (2022)). "In *Bivens* [. . .], the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez*, 589 U.S. at 99 (internal citations omitted). The Supreme Court has expanded this implied cause of action only twice, recognizing a *Bivens* remedy for a Fifth Amendment gender discrimination claim, *Davis v. Passman*, 442 U.S. 228, 230–31 (1979), and for an Eighth Amendment inadequate medical care claim raised by a federal prisoner's decedents. *Carlson v. Green*, 446 U.S. 14, 24–25 (1980).

Since then, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting *Malesko*, 534 U.S. at 68). *Ziglar* "clarified [a] two-step framework that courts must use to decide whether to recognize an implied cause of action against federal agents for constitutional violations." *Schwartz v. Miller*, __ F.4th__, No. 23-1343, 2025 WL 2473008, at *4 (9th Cir. Aug. 28, 2025) (citing *Ziglar*, 582 U.S. at 135–37). The first step requires courts to ask whether the case arises in a new context, *i.e.,* "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* (citing

---

[4] The Court notes Plaintiff's pleading fails to state whether he seeks to sue Burganson in either his individual or official capacity. But because he seeks damages, the Court will presume for purposes of screening that Plaintiff intends to sue Burganson in his individual capacity only. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity.") (cleaned up).

*Ziglar*, 582 U.S. at 139.) "If the case does differ, then courts must consider whether 'there are special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "This second step focuses on 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*

"'[E]ven one' step-two special factor is sufficient to foreclose courts from extending a *Bivens* remedy in a new context." *Id.* (quoting *Egbert*, 596 U.S. at 496). "Indeed, the second step will resolve against a new *Bivens* remedy 'in all but the most unusual circumstances,' because 'in most every case,' Congress is better positioned to provide a damages remedy." *Id.* (quoting *Egbert*, 596 U.S. at 486, 492). In short, "[r]ather than dispens[ing] with *Bivens* [altogether], the [Supreme] Court now emphasizes that recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 483 (quoting *Ziglar*, 582 U.S. at 121).

### a.     *Plaintiff's Claims Arise in New Contexts*

Here, while Plaintiff expressly mentions only violations of his right to "due process," his pleading centers primarily on the conditions of his confinement at MCC and the actions of Correctional Officer Burganson, which he describes as "punishment." (*See* Doc. No. 1 at 2, 6.).[5]

---

[5] At the time of filing, Plaintiff was held in a secured housing unit at MCC where he claimed to have been segregated while awaiting transfer *after* having been sentenced to BOP custody for a term of 50 months. (*See* Doc. No. 1 at 1.) The Court has confirmed Plaintiff was found to have violated the terms of his supervised release based on a guilty plea and conviction in Superior Court of California (San Diego) Case Number SCD292707, and had his supervised release revoked on December 12, 2024, in *United States v. Mendez, et al.*, S.D. Cal. Case No. 3:09-cr-00710-JLS-6 (Doc. Nos. 744, 747). *See Kim v. Allison*, 87 F.4th 994, 998 n.3 (9th Cir. 2023) (noting that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). Thus, while Plaintiff was housed at MCC, which is primarily a pretrial federal detention facility, at the time he alleges Correctional Officer Burganson subjected him to unconstitutional conditions, his status as a convicted prisoner implicates the Eighth Amendment. *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (distinguishing application of the Fifth Amendment Due Process clause and Eighth Amendment Cruel and Unusual Punishment clause); *Gary H. v. Hegstrom*, 831 F.2d

  The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "[i]t is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). But while the Ninth Circuit has affirmed the ongoing viability of an Eighth Amendment *Bivens* cause of action in cases filed by federal prisoners alleging deliberate indifference by BOP staff to serious medical needs found "identical . . . in all meaningful respects" to *Carlson*, *see Schwartz,* 2025 WL 2473008, at *2 (citing *Watanabe v. Derr*, 115 F.4th 1034, 1036 (9th Cir. 2024); *see also Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023)*,* neither the Ninth Circuit nor the Supreme Court has recognized an implied *Bivens* cause of action for Eighth Amendment conditions of confinement claims *not* involving claims of inadequate medical care post-*Ziglar*. *See, e.g.*, *Goldey v. Fields*, __ U.S. __, 145 S. Ct. 942, 944 (2025) (per curiam) (finding Eighth Amendment excessive force claims against federal prison officials "arise[] in a new context, and 'special factors' counsel against recognizing an implied *Bivens* cause of action for [those] violations"); *Chambers v. Herrera*, 78 F.4th 1100, 1105 (9th Cir. 2023) (finding no implied cause of action for federal inmate's Eighth Amendment failure to protect claims because they "differ from *Carlson* and thus represent a new *Bivens* context").

  Plaintiff alleges he was subjected to "very harsh conditions" while assigned to MCC's SHU and granted only limited access to showers, phones, visitation, and fresh air despite being assigned there for "non-disciplinary reasons." (*See* Doc. No. 1 at 1–2.) He further claims Burganson specifically denied him soap, a spoon, and toilet paper, and "tampered" with his food in order to "torture" him. (*Id.* at 4–5.) These types of Eighth Amendment conditions claims, like the excessive force and failure to protect claims

---

1430, 1432 (9th Cir. 1987) ("The status of the detainees determines the appropriate standard for evaluating conditions of confinement. The [E]ighth [A]mendment applies to 'convicted prisoners.'") (citation omitted).

asserted in *Goldey* and *Chambers*, present a new *Bivens* context because Plaintiff does not allege Burganson failed to treat a serious medical condition, which was the "only" Eighth Amendment *Bivens* cause of action recognized by *Carlson*. *See Ziglar*, 582 U.S. at 131; *Carlson*, 446 U.S. at 16; *see also Marquez v. Rodriguez*, 81 F.4th 1027, 1031 (9th Cir. 2023) ("*Egbert* … suggest[s] that a 'new *Bivens* context' arises anywhere that the [Supreme] Court has not affirmatively stated that *Bivens* applies."). Rather, Plaintiff's Eighth Amendment claims are "different in a meaningful way," and instead resemble the conditions of the confinement claims the Supreme Court has characterized as "seek[ing] to extend *Carlson* to a new context." *Ziglar,* 582 U.S. at 139, 147 (distinguishing Eighth Amendment inadequate medical treatment claims cognizable under *Carlson* from "claim[s] alleging that a warden allowed guards to abuse detainees.").

Therefore, because Plaintiff's suit seeks to extend a damages remedy to a category of claims that are "'meaningful[ly]' different" from those recognized as cognizable in *Carlson*, the Court finds his Eighth Amendment conditions of confinement allegations involving Officer Burganson arise in a new *Bivens* context. *Ziglar*, 582 U.S. at 139; *Egbert*, 596 U.S. at 492; *Schwarz v. Meinberg,* 761 F. App'x 732, 734 (9th Cir. 2019) ("[Plaintiff's] Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because [plaintiff] does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*.") (internal citations omitted); *Justis v. Doerer, et al.,* No. 1:25-CV-00138-JLT-SAB (PC), 2025 WL 2840836, at *2 (E.D. Cal. Oct. 7, 2025) (dismissing federal prisoner's Eighth Amendment conditions of confinement claims for failure to state a cognizable claim for relief under *Bivens*); *Papazian v. Doerer, et al*., Case No. 1:24-cv-01182-HBK (PC) (E.D. Cal. April 1, 2025) (Order screening first amended complaint pursuant to 28 U.S.C. § 1915A and dismissing Eighth Amendment conditions of confinement claims because "a *Bivens* remedy has not been recognized in the context of inmate lockdown conditions.") (Doc. No. 20 at 4).

To the extent Plaintiff alleges Burganson "gave all [his] personal property away," he also fails to allege a viable Fifth Amendment due process claim. (*See* Doc. No. 1 at 5.)

"The only Fifth Amendment-based *Bivens* claim that the Supreme Court has recognized was the one in *Davis*, which 'concerned alleged sex discrimination on Capitol Hill.'" *Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020)); *Davis*, 442 U.S. at 230. "[N]either the Supreme Court nor [the Ninth Circuit] ha[s] expanded *Bivens* in the context of a prisoner's . . . Fifth Amendment procedural due process claims." *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018); *see also Stanard*, 88 F.4th at 818 (Fifth Amendment claims other than "in the context of gender-based employment discrimination" are a new context for *Bivens*); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169 (E.D. Cal. 2018) ("The Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process."), *aff'd*, 2023 WL 8064536 (9th Cir. Nov. 21, 2023).

Thus, because Plaintiff seeks damages against Officer Burganson based on claims that he confiscated his property without due process, the Court finds his claims also arise in a new context because he seeks to extend a damages remedy to a category of claims and defendants that differ "in a meaningful way from previous *Bivens* cases." *Ziglar*, 582 U.S. at 139; *Egbert*, 596 U.S. at 492 (citing *Malesko*, 534 U.S. at 68); *Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) (finding deprivation of property claim involved a new context and was not actionable under *Bivens*).

Accordingly, a *Bivens* remedy is unavailable as to either Plaintiff's conditions of confinement or deprivation of property claims because as discussed below, there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136 (internal quotation marks omitted)); *Stanard*, 88 F.4th at 818.

### b.   *Special Factors Counsel Hesitation*

In applying its special factors analysis to Plaintiff's conditions and due process claims "[the] court faces only one question:  whether there is *any* rational reason (even one)

to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (emphasis original) (quoting *Ziglar*, 582 U.S. at 136); *Stanard*, 88 F.4th at 816. "If there are alternative remedial structures in place, 'that alone,' like any other special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154 (quoting *Ziglar*, 582 U.S. at 137); *Stanard*, 88 F.4th at 816. Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy[,] . . . even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Egbert*, 596 U.S. at 498 (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

      Here, the existence of an alternative administrative remedial structure counsels hesitation in extending an implied *Bivens* remedy for Plaintiff's alleged conditions of confinement and due process claims. Specifically, Plaintiff admits he filed several grievances alerting MCC's Warden "explaining the whole situation." (*See* Doc. No. 1 at 4.) In fact, Plaintiff admits his initial grievance alleviated some of his concerns, and he "started getting the same food portions as the rest of the inmates." (*Id.* at 4–5.) These allegations confirm MCC has established an alternative remedial mechanism through which Plaintiff can, *and did,* seek administrative relief with respect to his claims. (*See* Doc. No. 1 at 4–5, 6.) *See also Malesko,* 534 U.S. at 74 (noting that federal inmate housed in private halfway house under contract with the Federal Bureau of Prisons had "full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program (ARP)," which provides "'a process through which inmates may seek formal review of an issue relating to any aspect of his/her own confinement'") (quoting 28 C.F.R. § 542.10); *see also Vega*, 881 F.3d at 1154 (precluding a *Bivens* relief where the ARP provided an "adequate, and more appropriate, remedy to

vindicate plaintiff's [First Amendment] right[] to access the courts and [Fifth Amendment] procedural due process" claims against employees of a private non-profit BOP re-entry program contractor). The fact that Plaintiff's grievances did not fully address or prevent any additional complaints related to his diet or any other condition of his confinement at MCC "makes no difference." *Chambers*, 78 F.3d at 1107 n.3 ("That the alternative remedy existed at all is the factor [courts] consider under *Egbert*[.]") (citation omitted).

For all these reasons, the Court concludes both Plaintiff's cruel and unusual punishment and due process claims arise in new contexts and the "unforgiving" special factors inquiry counsels hesitation in extending *Bivens* relief. *Egbert*, 596 U.S. at 492; *Stanard*, 88 F.4th at 818. Therefore, his claims against Officer Burganson also fail to state a claim upon which relief can be granted and are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### D.   Leave to Amend

While the Ninth Circuit has characterized new *Bivens* claims as "dead on arrival," *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023), and any amended pleading Plaintiff may wish to file against Officer Burganson based on alleged violations of either his Eighth Amendment or due process rights "may ultimately suffer the same fate, 'mostly dead is slightly alive.'" *Chambers*, 78 F.4th at 1108 (quoting PRINCESS BRIDE (20th Century Fox 1987)). Therefore, having now provided Plaintiff with "notice of the deficiencies in his complaint," the Court will grant him an opportunity to fix them *with respect to Officer Burganson only*. *See Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992)); *Chambers*, 78 F.4th at 1108 (remanding *pro se* litigant's *Bivens* action to district court to determine whether "more detailed factual allegations could cure the deficiencies in his complaint under *Egbert*"). Because Plaintiff could not plausibly proceed with any viable *Bivens* action against the MCC, however, leave to amend is denied as futile. *See W. Radio Servs. Co. v. U.S. Forest Serv.,* 578 F.3d 1116, 1119 (9th Cir. 2009) ("[N]o *Bivens* remedy is available against a federal agency.") (citing

*Meyer*, 510 U.S. at 484); *see also Swinton v. Department of Justice, et al.*, No. 22-CV-04276-JST, 2025 WL 2772607, at *7 (N.D. Cal. Sept. 26, 2025) (dismissing purported *Bivens* claims against the DOJ and BOP for failing to state a claim "with prejudice").

## III.   CONCLUSION

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 4).

2. **DIRECTS** the Warden of USP Coleman II, his designee, or any agency later having custody, to collect from Plaintiff's trust account the $81.19 initial partial filing fee assessed pursuant to 28 U.S.C. § 1915(b)(1), if those funds are available in Plaintiff's account at the time this Order is executed, and garnish the remainder of the $350 filing fee owed in this case by forwarding payments to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on the Warden of USP Coleman II, U.S. Penitentiary, P.O. Box 1024, Coleman, Florida, 33521.

4. **DISMISSES** Plaintiff's Complaint *sua sponte* and in its entirety based on his failure to state a claim upon which *Bivens* relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. **DIRECTS** the Clerk of the Court to terminate Defendant MCC San Diego as a party to this action; and

6. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order to file an Amended Complaint which cures the deficiencies of pleading noted with respect to Officer Burganson *only*. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the

original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which *Bivens* relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**

Dated:  October 17, 2025

Hon. Anthony J. Battaglia
United States District Judge